David A. Nenni (AK Bar No. 1607063)
**JACKSON LEWIS P.C.**
PNC Center, 26th Floor
201 E. Fifth Street
Cincinnati, OH  45202
Telephone:  513-898-0050
Facsimile:  513-898-0051
david.nenni@jacksonlewis.com

Stacey C.S. Cerrone
Lindsey H. Chopin
Adam R. Carlisle
**JACKSON LEWIS P.C.**
601 Poydras Street, Suite 1400
New Orleans, LA 70130
Telephone: 504-208-1755
Facsimile: 504-208-1759
*Counsel for Defendants Cook Inlet Region, Inc., CIRI Board of*
*Directors, and the Members of and the Plan Committee*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| Luke Layman, individually and as representatives of a class of similarly situated participants in the Cook Inlet Region 401K Retirement Plan, and on behalf of the Plan,<br><br>   Plaintiff,<br><br> v.<br><br>Cook Inlet Region, Inc., CIRI Board of Directors, Members of and the Plan Committee, JOHN AND JANE DOES 1-30 IN THEIR CAPACITIES AS FIDUCIARIES,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:26-cv-00084 [ACP] |

## DEFENDANTS' MOTION TO DISMISS

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*           Page **i**
Case 3:26-cv-00084-ACP   Document 16   Filed 05/14/26   Page 1 of 40

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 2

    I.   The Plan. .............................................................................................................. 2

    II.   The Parties. .......................................................................................................... 2

    III.    The Plan's Investment Options. ....................................................................... 3

    IV.    UBS, The Plan's Investment Advisor. ............................................................ 7

    V.   Plaintiff's Claims. ............................................................................................... 8

LEGAL STANDARDS .................................................................................................... 11

    I.   Rule 12(b)(6) Pleading Standards. .................................................................. 11

    II.   Rule 12(b)(1) Standing Requirements. ........................................................... 11

ARGUMENT .................................................................................................................... 12

    I.   Plaintiff's Prudence Claim Fails under ERISA's Context Specific Pleading
    Standards. ................................................................................................................. 12

        A.   Legal Standards for ERISA Prudence Claims. ................................................. 13

        B.   Plaintiff's Underperformance Allegations Fail to State an Imprudence Claim. . 13

        C.   Plaintiff's Share Class Allegations Fail to State an Imprudence Claim. ............ 26

    II.   Plaintiff's Prohibited Transaction Allegations Fail to State a Claim. .................... 29

        A.   Plaintiff Fails to State a Prohibited Transaction Claim under Section 406(b). ... 29

        B.   Plaintiff Fails to State a Prohibited Transaction Claim under Section 406(a). ... 30

CONCLUSION ................................................................................................................. 33

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*                              Page **ii**

Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 2 of 40

**Page(s)**

**Cases**

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ...............................................................*passim*

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
579 F. Supp. 3d 1133 (N.D. Cal. 2022) ...............................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................. 11

*Bloom v. AllianceBernstein L.P.*,
725 F. Supp. 3d 325 (S.D.N.Y. 2024)....................................... 17, 21, 22, 24

*Boyette v. Montefiore Med. Ctr.*,
No. 22-cv-5280 (JGK), 2023 U.S. Dist. LEXIS 203442 (S.D.N.Y. Nov.
13, 2023) .......................................................................................27, 29

*Collins v. Northeast Grocery, Inc.*,
No. 24-2339-cv, 2025 U.S. App. LEXIS 20979 (2d Cir. Aug. 18, 2025) ....... 14, 23, 31

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) .............................................................................. 12, 31

*Davis v. Salesforce.Com, Inc.*
No. 21-15867, 2022 U.S. App. LEXIS 9527 (9th Cir. Apr. 8, 2022)......................... 18

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ...............................................................*passim*

*Dorman v. Charles Schwab Corp.*,
No. 17-cv-285-CW, 2018 U.S. Dist. LEXIS 218049 (N.D. Cal. Sept. 20,
2018) ....................................................................................................... 23

*Enstrom v. SAS Inst. Inc.*,
No. 5:24-CV-105-D, 2026 U.S. Dist. LEXIS 35036 (E.D.N.C. Feb. 12,
2026) ....................................................................................................... 26

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ...................................................................................... 11

*Fisher v. Secchitano*,
No. 3:18-cv-1639-JR, 2020 U.S. Dist. LEXIS 40808 (D. Ore. Feb. 3,
2020) ............................................................................................................... 2

*Gonzales v. Northwell Health, Inc.*,
632 F. Supp. 3d 148 (E.D.N.Y. 2022) ....................................................... 23

*Hall v. Capital One Fin. Corp.*,
No. 1:22-cv-857, 2023 U.S. Dist. LEXIS 35391 (E.D. Va. Mar. 1, 2023)................. 22

*Hecker v. Deere & Co.*,
569 F.3d 708 (7th Cir. 2009) ..................................................................... 29

*Hughes v. Northwestern Univ.*,
595 U.S. 170 (2022).................................................................................... 11

*Hutchins v. HP Inc.*,
767 F. Supp. 3d 912 (N.D. Cal. 2025) ....................................................... 30

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) ..................................................................... 29

*Mateya v. Cook Grp., Inc.*,
No. 1:22-cv-1271-RLY-TAB, 2023 U.S. Dist. LEXIS 124838 (S.D. Ind.
June 16, 2023) .............................................................................................. 32

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ...........................................................*passim*

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ..................................................... 3, 17, 32, 33

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ..................................................... 14, 17, 19

*Miller v. Pfizer, Inc.*,
No. 1:23-cv-594, 2024 U.S. Dist. LEXIS 252014 (W.D. Mich. Oct. 17,
2024) ............................................................................................................. 32

*Nolan v. Sonic Auto.*,
No. 3:25-CV-474-KDB-WCM, 2026 U.S. Dist. LEXIS 96855
(W.D.N.C. Apr. 30, 2026)...................................................................*passim*

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*

*In re Omnicom ERISA Litig.*,
No. 20-cv-4141 (CM), 2022 U.S. Dist. LEXIS 239690 (S.D.N.Y. Aug.
11, 2022) ...............................................................................................................27

*Partida v. Schenker Inc.*,
No. 22-cv-9192, 2024 U.S. Dist. LEXIS 58297 (N.D. Cal. Mar. 29,
2024) ...................................................................................................................... 6

*Peeler v. Bayada Home Health Care, Inc.*,
No. 1:24-cv-231-MR, 2026 U.S. Dist. LEXIS 14223 (W.D.N.C. Jan. 27,
2026)
..............................................................................................................12, 30, 31, 33

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
No. 23-3785-EJD, 2024 U.S. Dist. LEXIS 114734 (N.D. Cal. June 28,
2024)
.............................................................................................................6, 17, 19, 33

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
No. 3:15-cv-1839 (VAB), 2016 U.S. Dist. LEXIS 180567 (D. Conn.
Dec. 30, 2016) ................................................................................................ 27, 28

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
780 F. Supp. 3d 870 (D. Ariz. 2025) ........................................................................ 30

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ...............................................................................*passim*

*Smith v. Rec. Equip. Inc.*,
No. 3:24-cv-6032-TMC, 2025 U.S. Dist. LEXIS 135847 (W.D. Wash.
July 16, 2025)...........................................................................................................28

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................................................................ 12

*Thole v. U.S. Bank. N.A.*,
590 U.S. 538 (2020)................................................................................................ 12

*White v. Chevron Corp.*,
752 F. App'x 453 (9th Cir. 2018) ..............................................................................31

*White v. Chevron Corp.*,
No. 16-cv-793-PJH, 2016 U.S. Dist. LEXIS 115875 (N.D. Cal. Aug. 29,
2016) ................................................................................................................ 22, 27

Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 5 of 40

*Wilson v. Craver*,
994 F.3d 1085 (9th Cir. 2021) ..................................................................... 30

*Young Cho v. Prudential Ins. Co. of Am.*,
No. 19-19886 (JMV) (SCM), 2021 U.S. Dist. LEXIS 185397 (D.N.J.
Sept. 27, 2021) ..................................................................................... 20

**Statutes**

29 U.S.C. § 1104(a)(1) ................................................................................. 13, 26

29 U.S.C. § 1106 ......................................................................................... 10, 30

29 U.S.C. § 1113 ............................................................................................. 31

Alaska Native Claims Settlement Act. ¶ 20 ................................................... 2, 3

ERISA.................................................................................................*passim*

**Other Authorities**

Eric Platt, *Star Fidelity stockpicker William Danoff to retire*, Financial
Times (Jan. 27, 2026)............................................................................. 7

Rule 12(b)(1) ................................................................................................. 1, 12

Rule 12(b)(6) ................................................................................................. 1, 11

## INTRODUCTION

Plaintiff's Complaint is one of hundreds of thinly pled challenges to large companies' administration of ERISA defined contribution plans filed in recent years. These lawsuits take advantage of hindsight to claim that fiduciaries violated the Employee Retirement Income Security Act of 1974 ("ERISA") by retaining "underperforming" investments and "costly" service providers. But ERISA was not intended to empower an army of Monday morning quarterbacks. Instead, the law requires fiduciaries to act reasonably and employ a thorough process.

Here, Plaintiff asks the Court to infer that Defendants acted imprudently by pointing to modest differences between investment returns and service provider fees against inapt comparators. Each comparison falls far short of the meaningful benchmark standard most recently articulated in *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015 (9th Cir. 2025). And because Plaintiff's comparators are legally flawed, he cannot identify a legally cognizable injury and lacks standing to bring his untimely prohibited transaction claim. When these flawed comparisons are disregarded, all that remains is a conclusory Complaint that must be dismissed for failure to state a claim under Rule 12(b)(6) and lack of standing under Rule 12(b)(1).

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*                                                                 Page **1**
Case 3:26-cv-00084-ACP     Document 16     Filed 05/14/26     Page 7 of 40

### I.     The Plan.

The Cook Inlet Region 401(k) Retirement Plan ("Plan") is a multiple employer defined contribution 401(k) retirement plan. ECF No. 1, ¶ 6.[1] Plan participants have individual accounts which are funded by participating employer and employee contributions. Defendants' Request for Judicial Notice ("DRJN"), Ex.1, 2025 Summary Plan Description, p. CIRI_000007-9.[2] The values of participants' accounts are determined by adding the contributions and investment gains and deducting applicable investment expenses or losses. *Id.* at CIRI_000011.

At the beginning of the Class Period,[3] the Plan had approximately 5,190 participants with account balances and over $374 million in Plan assets. DRJN, Ex. 2, 2020 Form 5500, p. CIRI_000069, CIRI_000095.[4] As of 2024, the Plan had 6,808 participants and over $589 million in assets. DRJN, Ex. 3, 2024 Form 5500, p. CIRI_000436, CIRI_000460.

### II.     The Parties.

Cook Inlet Region, Inc. ("CIRI") is a land-based Alaska Native Regional Corporation created under the Alaska Native Claims Settlement Act. ¶ 20. CIRI includes several subsidiaries and affiliates (*see, e.g.*, ¶ 6) whose employees are eligible to participate

---

[1] Hereafter the Complaint is cited as "¶___"

[2] As explained in Defendants' contemporaneously filed Motion for Judicial Notice, the Court can take judicial notice of the Summary Plan Description because Plaintiff incorporates it into his claims by reference (¶ 4) and because courts regularly consider plan documents in considering ERISA claims. *See Fisher v. Secchitano*, No. 3:18-cv-1639-JR, 2020 U.S. Dist. LEXIS 40808, at *14-15 (D. Ore. Feb. 3, 2020) (taking judicial notice of a summary plan description which "is a statutorily required summary of the Plan's benefits, requirements and other information that must be provided to participants and beneficiaries.").

[3] Plaintiff's Complaint defines the Class Period as "six years prior to the filing of this Complaint and continuing through the date of judgment," which here runs from February 23, 2020 through the present. ¶ 127.

[4] The Court can also take judicial notice of the Plan's Form 5500s because they are publicly available and incorporated into Plaintiff's claims by reference (¶ 5). *Fisher*, 2020 U.S. Dist. LEXIS 40808, at *14-15.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*                                                                    Page **2**

in CIRI sponsored 401(k) plan. CIRI delegated the administration of the Plan to the Cook Inlet 401(k) Retirement Plan Committee ("Committee"). ¶ 4. Specifically, CIRI tasked the Committee with reviewing and monitoring the Plan's investments, service providers, disclosures, and regulatory filings. *See id.* This lawsuit names CIRI, the CIRI Board of Directors, the Committee, and the Committee's individual members as Defendants. ¶ 19-20.

Plaintiff is an employee of a CIRI affiliated entity and has participated in the Plan since the first quarter of 2021. DRJN, Ex. 4, Plaintiff Q1 2021 Plan Statement; Ex. 5, Plaintiff Q4 2025 Plan Statement. During that time, Plaintiff invested his Plan assets in the Fidelity Freedom Fund 2055 K as well as the Fidelity Freedom Fund 2065 CIT. *Id.*

### III.    The Plan's Investment Options.

During the Class Period, the Plan offered a choice of between 16 and 18 investments for Plan participants to invest their retirement savings. DRJN, Ex. 6, 2020 404(a) Disclosure;[5] Ex. 7, 2021 404(a) Disclosure; Ex. 8, 2022 404(a) Disclosure; Ex. 9, 2023 404(a) Disclosure; Ex. 10, 2024 404(a) Disclosure; Ex. 11, 2025 404(a) Disclosure. These investments cover the full risk spectrum as well as the major asset classes and investment styles. *Id.* The Plan's investment lineup has always included a suite of target date retirement funds, active and passively managed funds, fixed income funds, and a money market fund. *Id.*

---

[5] The Court can take judicial notice of the Plan's 404(a) disclosures because they are incorporated by reference in Plaintiff's Complaint (¶ 14) and are routinely considered by courts at the motion to dismiss stage. *See Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022).

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*                                                          Page **3**

*Active & Passive Investments*.  Mutual funds can be actively or passively managed.  *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 483-85 (8th Cir. 2020).  Actively managed funds have portfolio manager(s) who buy and sell underlying securities in an effort to maximize returns and outperform the market.  *Id.*  Passively managed funds (sometimes referred to as index funds), on the other hand, invest in a fixed portfolio structure to track a defined market index.  *Id.*  Both active and passive investments charge investors fees[6] to compensate the investment managers.  Due to the "considerable judgment and expertise" required to manage active funds, as compared to the "little judgment and expertise" needed to passively track an index, actively managed funds typically charge higher fees than passively managed funds.  *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1163 (6th Cir. 2022) (quoting Charles D. Ellis, *Winning the Loser's Game* 7, 28 (4th ed. 2002)).  There is a long history of wide-ranging opinions on the pros and cons of active and passive management among investment experts.  *Smith*, 37 F.4th at 1165.  The Committee did not try to end that debate; it simply offered participants a mixture of both investment styles.  *See* DRJN, Ex. 11, 2025 404(a) Disclosure.

*Fund Share Classes*. Investment companies often offer multiple share classes of mutual funds.  *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1151-52 (10th Cir. 2023).  Share classes are essentially different pricing structures for the investment—different share classes have different fee structures geared towards the individual needs

---

[6] This fee, known as an expense ratio, is paid through participants' accounts as a percentage of their holdings in the underlying investment. Expense ratios are often expressed in basis points—one basis point is one-one hundredth (1/100) of a percent.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*                                                             Page **4**
Case 3:26-cv-00084-ACP     Document 16     Filed 05/14/26     Page 10 of 40

and/or size of specific retirement plans. *Id.* For example, investment companies may offer one share class with revenue sharing, which is "a practice that takes 'a portion of the investment-management fees collected through an expense ratio' to pay for [administrative] fees." *Id.* at 1151 n.12 (quoting *Albert v.* Oshkosh, 47 F.4th 570, 574 (7th Cir. 2022)). Other plans that pay administrative expenses in different way may offer a different share class of the same investment that does not include revenue sharing.

*Challenged Investments*. Plaintiff's Complaint challenges the prudence of five Plan investments—the Fidelity Freedom Fund target date series, the Wasatch Core Growth Fund Institutional, the Hartford Dividend and Growth Fund R6, the Fidelity Contrafund, and the MFS Mid Cap Growth R6 Fund (together, the "Challenged Investments").

From the beginning of the Class Period until November 18, 2022, the Plan offered the Fidelity Freedom Fund K share class ("FFFs") to Plan participants. DRJN, Ex. 6, 2020 404(a) Disclosure, p. CIRI_000536-37; Ex. 7, 2021 404(a) Disclosure, p. CIRI_000557-58; Ex. 8, 2022 404(a) Disclosure, p. CIRI_000578-79. The FFFs are a suite of target date funds ("TDFs"), which are a set of investments that include multiple vintages which correspond to different target retirement years. *Smith*, 37 F.4th at 1164. TDF fund managers adjust the underlying investments and risk profile (often called a glide path) of each vintage over a predetermined timeframe. *Id.* The FFFs are an actively managed TDF suite that seeks high total returns up until the target retirement date. DRJN, Ex. 12, FFF

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)* Page **5**
Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 11 of 40

2022 Summary Prospectus.[7]  On November 18, 2022, the Plan exchanged the FFFs for the Fidelity Freedom Commingled Pool Class D ("FFF CITs").[8]  DRJN, Ex. 13, Oct. 2022 Fund Change Notice.[9]  ¶ 90.

The Wasatch Core Growth Fund Institutional ("Wasatch Fund") has been a Plan investment option since December 28, 2020.  DRJN, Ex. 14, Nov. 2020 Fund Change Notice; Ex. 11, 2025 404(a) Disclosure, p. CIRI_000638.  The Wasatch Fund is an actively managed small cap growth fund that seeks to grow capital by investing in small growing companies.  DRJN, Ex. 15, Wasatch 2025 Summary Prospectus.

The Hartford Dividend and Growth Fund R6 ("Hartford Fund") has also been a Plan investment option since December 28, 2020.  DRJN, Ex. 14, Nov. 2020 Fund Change Notice; Ex. 11, 2025 404(a) Disclosure, p. CIRI_000638.  The Hartford Fund is an actively managed large cap value fund that seeks to grow capital by investing in large companies with high dividend yields and potential for capital appreciation.  DRJN, Ex. 20, Hartford 2026 Summary Prospectus.

The Fidelity Contrafund ("Contrafund") has been in the Plan investment lineup for the entire Class Period.[10]  The Contrafund is an actively managed large cap growth fund that seeks capital appreciation by investing in large companies whose value is not fully

---

[7] Courts regularly take judicial notice of publicly available investment disclosures of challenged funds in ERISA class actions.  *See Phillips v. Cobham Advanced Elec. Sols., Inc.*, No. 23-3785-EJD, 2024 U.S. Dist. LEXIS 114734, at *15-16 (N.D. Cal. June 28, 2024); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022).

[8] The FFFs are mutual funds whereas the FFF CITs are collective investment trusts which operate under a different regulatory and compliance regime.  *See Matney*, 80 F.4th at 1142.

[9] The Court can also take judicial notice of participant disclosures for ERISA plans when resolving a motion to dismiss. *Partida v. Schenker Inc.*, No. 22-cv-9192, 2024 U.S. Dist. LEXIS 58297, at *15 n.4 (N.D. Cal. Mar. 29, 2024).

[10] On November 18, 2022 the Plan switched from the K share class of the Contrafund to the K6 share class.  DRJN, Ex. 13, Oct. 2022 Fund Change Notice.  The share class of the Contrafund is not at issue in Plaintiff's Complaint.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*

Page **6**

recognized by the public or otherwise has the potential for growth. DRJN, Ex. 21, Contrafund 2025 Summary Prospectus. It is widely considered a best-of-the-bench fund, posting nearly 10,500% returns over the past three decades (double that of the S&P 500).[11]

The MFS Mid Cap Growth R6 Fund ("MFS Fund") has been in the Plan investment lineup for the entire Class Period. DRJN, Ex. 6, 2020 404(a) Disclosure, p. CIRI_000535; Ex. 11, 2025 404(a) Disclosure, p. CIRI_000638. The MFS Fund is a mid-cap growth fund that invests in medium sized companies (included in the Russell Midcap Index) with the potential for growth. DRJN, Ex. 22, MFS 2025 Summary Prospectus.

## IV.   UBS, The Plan's Investment Advisor.

Before the Class Period, CIRI retained UBS Financial Services Inc. ("UBS") to provide investment advice to the Committee. ¶ 52. The Plan's Investment Policy Statement ("IPS") includes a non-exhaustive list of UBS's duties which include: "(a) [r]esearch and assist in selecting investment funds; (b) [c]onduct due diligence monitoring of the investment funds and report to the Committee; (c) [n]otify the Committee of any issue that may impact the investment of Plan assets (e.g., change in ownership, professional staff, etc.); (d) [a]ssist the Committee in developing and reviewing investment strategies; (e) [a]ssist in the implementation of any recommended investment fund changes; (f) [p]rovide reports on the performance of the investment funds on a regular basis; [and] (g) [p]eriodically review and evaluate the fees and costs of the Plan including investment

---

[11] *See also* Eric Platt, *Star Fidelity stockpicker William Danoff to retire*, Financial Times (Jan. 27, 2026), https://www.ft.com/content/3a35466c-c9f9-4fbd-9b71-a406cad64f19?syn-25a6b1a6=1.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*  Page **7**

management, trust and custody, administrative services, education and consulting fees."

DRJN, Ex. 23, 2022 IPS, p. CIRI_000024-25.[12]

UBS is compensated for the investment advice it provides to the Committee by the Plan. As alleged in the Complaint, and confirmed on the Plan's Form 5500s, UBS's annual fees during the Class Period were $63,500 (2020), $45,000 (2021-2023), and $50,000 (2024). ¶ 120; *see also* DRJN, Ex. 2, 2020 Form 5500, p. CIRI_000077; Ex. 24, 2021 Form 5500, p. CIRI_000164; Ex. 25, 2022 Form 5500, p. CIRI_000257; Ex. 26, 2023 Form 5500, p. CIRI_000352; Ex. 3, 2024 Form 5500, p. CIRI_000444.

## V.     Plaintiff's Claims.

Plaintiff's Complaint asserts three counts that each allege that Defendants violated ERISA in administering the Plan.

In Count I, Plaintiff alleges Defendants violated ERISA's duty of prudence by retaining underperforming ("underperformance allegations") and costly investments ("share class allegations"). ¶¶ 135-146.

As to the underperformance allegations, Count I alleges that each of the Challenged Investments were imprudent due to their underperformance versus various inapt metrics. Specifically, Plaintiff alleges:

➢ The FFFs are imprudent because one of the funds in the suite, the FFF 2035 Fund, underperformed versus the S&P Target Allocation Series benchmark from 2010 through 2019 (¶ 68); had a poor geometric mean alpha, standard deviation of the

---

[12] The Court can take judicial notice of the Plan's IPS because it is incorporated by reference in Plaintiff's Complaint. *Supra* p. 2 n.4; ¶ 52.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)* Page **8**

alpha, and return versus risk ratio compared to the Morningstar 2035 peer category (¶ 71); and its risk-adjusted returns underperformed versus the American Funds 2035 Target Date Fund R6, TIAA-CREF Lifecycle Index 2035 Fund Institutional, Vanguard Target Retirement 2035, and T. Rowe Price Retirement 2035 from 2015 to 2022 (¶ 92).

➢ The Contrafund is an imprudent investment based on its return versus risk or information ratio, geometric mean, and 0.69% underperformance versus the Russell Growth Index between 2020 and 2025. ¶ 93.

➢ The Hartford Fund is imprudent because it underperformed versus the S&P 500 Index over the last five-years (13.25% versus 15%) and "by 1.63% annually for a decade." ¶¶ 96, 97.

➢ The Wasatch Fund is imprudent despite the fact that it outperformed the Russell Mid Cap Growth Index between 2010 and 2019, due to its standard deviation of the alpha and 3.33% underperformance versus the Russell Mid Cap Growth Index from 2020 to 2025. ¶ 99.

➢ Despite the MFS Fund's outperformance of the Russell Mid Cap Growth index between 2009 and 2019, it was imprudent due its "outsized volatility and return versus risk ratio," mean alpha, and 2.87% underperformance versus its benchmark between 2020 and 2025. ¶¶ 101, 102, 109. Plaintiff also takes issue with the fact that the Plan's 2025 404(a) disclosures use the Russell 3000 Index as a benchmark for the MFS Fund. ¶ 105.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*
Page **9**
Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 15 of 40

As to Count I's share class allegations, Plaintiff alleges that the retention of the K share class of the FFFs until November 18, 2022, was imprudent because the K6 share class was allegedly 20 basis points cheaper. ¶ 46. Plaintiff alleges that incurring additional fees for the K share class caused Plan participants to miss out on opportunities for additional investment gains. ¶ 50. Plaintiff also alleges that the D share class of the FFF CITs currently offered in the Plan is "more expensive" but does not identify a cheaper share class. ¶ 51.

Count II is a derivative claim that asserts the alleged fiduciary breach in Count I demonstrates that CIRI did not monitor Plan fiduciaries. ¶¶ 147-157.

Count III alleges Defendants committed prohibited transactions by dealing with Plan assets for their own benefit and permitting the Plan to transact with a party in interest. ¶¶ 158-169. Specifically, Plaintiff argues Defendants committed a prohibited transaction by providing services to the Plan and receiving compensation in violation of 29 U.S.C. § 1106(b) and that UBS's unreasonable compensation constitutes a prohibited transaction with a party in interest to the Plan under 29 U.S.C. § 1106(a). ¶¶ 115, 121, 163, 165(a).

Plaintiff supports their challenge to UBS's compensation with a 2017 publication that $300 per hour is appropriate compensation for defined contribution plan investment advisors. ¶ 116. Plaintiff further refers to a market survey which allegedly states 53 hours per year is the average amount of time financial advisors spend advising retirement plans. ¶ 117. Plaintiff combines these two metrics to argue that reasonable compensation for UBS was $16,218 per year. ¶ 118.

<u>**LEGAL STANDARDS**</u>

**I.      Rule 12(b)(6) Pleading Standards.**

The Federal Rules of Civil Procedure require a complaint to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To assess plausibility, courts strip out conclusory statements, which are not entitled to a presumption of truth, and evaluate whether the remaining well-pled factual allegations (if any) plausibly give rise to a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plaintiffs that merely plead "conceivable" or "possible" misconduct have not "nudged [their] claims…across the line" to plausibility.  *Id.*

When claims are brought under ERISA, the Supreme Court instructs courts to conduct a "careful, context-sensitive scrutiny" of the allegations while giving "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022).  Indeed, the Supreme Court recently reiterated that district courts in ERISA class actions must "use existing tools at their disposal to screen out meritless claims before discovery."  *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708 (2025).

**II.      Rule 12(b)(1) Standing Requirements.**

Under the United States Constitution, federal courts' jurisdiction is limited to cases and controversies.  The Supreme Court's application of this clause requires plaintiffs to demonstrate standing to pursue their claims.  Standing requires plaintiffs to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*                                                                Page **11**
Case 3:26-cv-00084-ACP      Document 16      Filed 05/14/26      Page 17 of 40

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, an injury means plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (citation omitted). "There is no ERISA exception to Article III." *Thole v. U.S. Bank. N.A.*, 590 U.S. 538, 547 (2020). Complaints that fail to identify a legally cognizable loss at the pleadings stage must be dismissed, because without standing, the court lacks subject matter jurisdiction. *Peeler v. Bayada Home Health Care, Inc.*, No. 1:24-cv-231-MR, 2026 U.S. Dist. LEXIS 14223, at *39-41 (W.D.N.C. Jan. 27, 2026).

## ARGUMENT

### I. Plaintiff's Prudence Claim Fails under ERISA's Context Specific Pleading Standards.

In Count I, Plaintiff alleges Defendants breached their fiduciary duty of prudence by retaining underperforming and costly Plan investments. Plaintiff's underperformance allegations fail to state a claim because each of the Complaint's comparisons are premised on market indexes, arbitrary investment data, or inapt investments that do not satisfy the meaningful benchmark standard. And even if the Court considers those inapt comparators, the Complaint improperly relies on hindsight and fails to identify substantial underperformance necessary to infer imprudence. Similarly, Plaintiff's share class allegations fail to state a claim because Plaintiff does not address the impact revenue sharing in the K share class of the FFFs had on participants' total fees. As a result, each of Plaintiff's prudence allegations lack the context necessary to state a claim under ERISA.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)* Page **12**
Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 18 of 40

### A. Legal Standards for ERISA Prudence Claims.

ERISA requires fiduciaries to act with the "care, skill, prudence, and diligence" of a reasonable fiduciary under similar circumstances (the duty of prudence). 29 U.S.C. § 1104(a)(1)(B). ERISA's duty of prudence is a process-based inquiry where courts determine, "'whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.'" *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1021 (9th Cir. 2025) (quoting *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004)). At the pleadings stage, plaintiffs lack knowledge on the methods fiduciaries employed, and thus, courts permit plaintiffs to "make 'circumstantial factual allegations' from which the court 'may reasonably infer from what is alleged that the process was flawed.'" *Anderson*, 137 F.4th at 1022 (quoting *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 718 (2d Cir. 2013)).

### B. Plaintiff's Underperformance Allegations Fail to State an Imprudence Claim.

Plaintiff's underperformance allegations fail to state an imprudence claim under ERISA's context specific pleading standards. First, Plaintiff does not allege meaningful benchmarks for any of the Challenged Investments as the Complaint exclusively compares the Challenged Investments to inapt comparators with different aims, styles, and strategies. Even still, the "underperformance" identified is slight and improperly relies on cherry-picked timeframes with the benefit of hindsight. As a result, Plaintiff's underperformance allegations fail to state a plausible claim and must be dismissed.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*
Page **13**

**1. Plaintiff's Complaint Does Not Allege a Meaningful Benchmark for Any of the Challenged Investments.**

The key to any complaint that asks the court to infer imprudence based on underperformance is to tether those comparisons to a meaningful benchmark. *Anderson*, 137 F.4th at 1022 (quoting *Matousek*, 51 F.4th at 278) ("when a plaintiff alleges imprudence based on a fiduciary's decision to make one investment rather than an alternative, '[t]he key to nudging an inference of imprudence from possible to plausible is providing a sound basis for comparison—a meaningful benchmark—not just alleging that costs are too high, or returns are too low.'"); *see also Collins v. Northeast Grocery, Inc.*, No. 24-2339-cv, 2025 U.S. App. LEXIS 20979, at *5-6 (2d Cir. Aug. 18, 2025); *Matney*, 80 F.4th at 1148; *Albert*, 47 F.4th at 581; *Davis*, 960 F.3d at 486; *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018). However, simply "labeling funds as 'comparable' or as a 'peer' is insufficient to establish that comparator funds are meaningful benchmarks against which to compare a challenged funds' performance." *Anderson v. Intel Corp. Inv. Policy Comm.*, 579 F. Supp. 3d 1133, 1147 (N.D. Cal. 2022), *aff'd* 137 F.4th 1015. For a comparator to be a meaningful benchmark, it must have "similar aims, risks, and potential rewards to the challenged fund." *Id.* at 1148. None of the Complaint's performance comparisons satisfy the meaningful benchmark standard which means the underperformance allegations are owed no weight and do not plausibly state a claim under ERISA.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)* Page **14**
Case 3:26-cv-00084-ACP Document 16 Filed 05/14/26 Page 20 of 40

### a. Plaintiff's Comparisons to Market Indexes Do Not Support an Inference of Imprudence.

Comparing actively managed investments to a market index does not satisfy the meaningful benchmark standard. *Anderson*, 579 F. Supp. 3d at 1150-51, *aff'd* 137 F.4th 1015; *Davis*, 960 F.3d at 485 n.4; *Smith*, 2021 U.S. Dist. LEXIS 169922, at \*27, *aff'd* 37 F.4th 1160 (6th Cir. 2022); *Nolan v. Sonic Auto.*, No. 3:25-CV-474-KDB-WCM, 2026 U.S. Dist. LEXIS 96855, at \*15-16 (W.D.N.C. Apr. 30, 2026). Market indexes are not actual, managed investments at all, nor do they include fees, rendering comparisons of their returns to actively managed funds unsuitable. *Davis*, 960 F.3d at 485, n.4; *Smith*, 2021 U.S. Dist. LEXIS 169922, at \*27, *aff'd* 37 F.4th 1160.

Yet each of Plaintiff's challenges to the actively managed Challenged Investments is premised on comparisons to various market indexes. ¶ 67 (comparing the FFFs to the S&P Target Allocation Series), ¶ 69 (comparing the Contrafund to the Russell 1000 Growth Index), ¶ 101 (comparing the MFS Fund to the Russell Mid Cap Growth Index), ¶ 96-97 (comparing the Hartford Fund to the S&P 500 Index), ¶ 98-99 (comparing the Wasatch Fund to the Russell Mid Cap Growth Index). None of these comparisons meet the meaningful benchmark standard and therefore do not infer imprudence.

What's more, Plaintiff does not compare the Challenged Investments to the market indexes identified by their respective investment managers. Per the Plan's disclosures and the fund's prospectus, the Contrafund is benchmarked against the S&P 500, not the Russell

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*
Page **15**
Case 3:26-cv-00084-ACP   Document 16   Filed 05/14/26   Page 21 of 40

1000 Growth as alleged in the Complaint.[13]  Similarly, for the Wasatch Fund, the Plan's disclosures and the fund's prospectus used the Russell 2000 Growth Index or the Russell 3000 Growth index, depending on the year, not the Russell Mid Cap Growth Index used in the Complaint.[14]  Plaintiff's indexes are not the indexes selected by the respective investment managers and necessarily have different goals, aims, and strategies, making them inappropriate comparators under the meaningful benchmark standard.  *Anderson*, 579 F. Supp. 3d at 1150, *aff'd* 137 F.4th 1015; *see also Nolan*, 2026 U.S. Dist. LEXIS 96855, at *20-22 (rejecting plaintiff's attempt to rely on a different benchmark than the challenged investment's manager).

### b.  Plaintiff's Comparison to Broad Peer Group Returns Does Not Plausibly Infer Imprudence.

Comparing an investment's returns to broad peer category returns does not satisfy the meaningful benchmark standard.  *Anderson*, 579 F. Supp. 3d at 1150, *aff'd* 137 F.4th 1015 (explaining that same peer category alleged in Plaintiff's Complaint included 224 different investments which did not share the same aims, risks, or rewards as the challenged

---

[13] ¶ 93; DRJN, Ex. 6, 2020 404(a) Disclosure, p. CIRI_000534; Ex. 7, 2021 404(a) Disclosure, p. CIRI_000555; Ex. 8, 2022 404(a) Disclosure, p. CIRI_000576; Ex. 9, 2023 404(a) Disclosure, p. CIRI_000597; Ex. 10, 2024 404(a) Disclosure, p. CIRI_000617; Ex. 11, 2025 404(a) Disclosure, p. CIRI_000637; *see also* DRJN, Ex. 37, 2020 Contrafund K Summary Prospectus, p. CIRI_000713; Ex. 21, 2025 Contrafund K6 Summary Prospectus, p. CIRI_000722.

[14] ¶ 98-99 (comparing the Wasatch Fund to the Russell Mid Cap Growth Fund); DRJN, Ex. 7, 2021 404(a) Disclosure, p. CIRI_000556 (Plan disclosure benchmarking against the Russell 2000); Ex. 8, 2022 404(a) Disclosure, p. CIRI_000577 (Russell 2000); Ex. 9, 2023 404(a) Disclosure, p. CIRI_000598 (Russell 2000 Growth); Ex. 10, 2024 404(a) Disclosure, p. CIRI_000618 (Russell 2000 Growth); Ex. 11, 2025 404(a) Disclosure, p. CIRI_000638 (Russell 3000 Index); Ex. 16, Wasatch 2021 Summary Prospectus, p. CIRI_000803 (Russell 2000 Index and Russell 2000 Growth Index); Ex.17, Wasatch 2022 Summary Prospectus, p. CIRI_000819 (Russell 2000 Index and Russell 2000 Growth Index); Ex. 18, Wasatch 2023 Summary Prospectus, p. CIRI_000835 (Russell 2000 Index and Russell 2000 Growth Index); Ex. 19, Wasatch 2024 Summary Prospectus, p. CIRI_000846 (Russell 2000 Index and Russell 2000 Growth Index); Ex. 15, Wasatch 2025 Summary Prospectus, p. CIRI_000855 (Russell 3000 Index, Russell 2000 Index, and Russell 2000 Growth Index)

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
Case No. 3:26-cv-00084 (ACP)                                    Page **16**
Case 3:26-cv-00084-ACP     Document 16     Filed 05/14/26     Page 22 of 40

investments); *Matney*, 80 F.4th at 1155; *Matousek*, 51 F.4th at 282; *Phillips*, 2025 U.S. Dist. LEXIS 184960, at \*15-16.  Specifically, Morningstar peer category returns are not a meaningful benchmark because they represent the average return for hundreds of investments with unique aims, risks, and rewards.  *Anderson*, 579 F. Supp. 3d at 1150, *aff'd* 137 F.4th 1015.

Accordingly, Plaintiff's passing reliance on the Morningstar peer category returns versus the FFFs (¶ 71) does not satisfy the meaningful benchmark standard and also cannot sustain an imprudence claim.

### c. Plaintiff's Four TDF Comparators Do Not Support an Inference of Imprudence.

Comparing investments to other, single investments with different aims, risks, and rewards also falls short of the meaningful benchmark standard.  *Anderson*, 579 F. Supp. 3d at 1150, *aff'd* 137 F.4th 1015; *Smith*, 37 F.4th at 1166; *Davis*, 960 F.3d at 485; *Meiners*, 898 F.3d at 823.  Indeed, because market conditions are unpredictable, always changing, and favor different investment styles at different times, all investments underperform. *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 341 (S.D.N.Y. 2024).  Thus, pointing to performance discrepancies between funds at a single point in time does not infer imprudence when the strategies, including glidepaths for TDFs, are unique; instead, it merely reveals which strategy was ideal for the market conditions at the time.  *Anderson*, 137 F.4th at 1022-23; *Smith*, 2021 U.S. Dist. LEXIS 169922, at \*19-20, *aff'd* 37 F.4th 1160; *Davis*, 960 F.3d at 486.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)* Page **17**
Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 23 of 40

Here, Plaintiff's four comparator TDF suites fail these standards. *See* ¶ 92. Take first Plaintiff's comparison to the TIAA-CREF TDFs. As evidenced by its name, the TIAA-CREF TDFs are passively managed and therefore are not appropriate comparators for the actively managed FFFs. *Davis v. Salesforce.Com, Inc.* No. 21-15867, 2022 U.S. App. LEXIS 9527, at *5 n.1 (9th Cir. Apr. 8, 2022) (affirming an allegation that defendants failed to "consider passively managed mutual fund alternatives to the actively managed fund[]" did not plausibly state a claim); *Anderson*, 579 F. Supp. 3d at 1149, *aff'd* 137 F.4th 1015; *Matney*, 80 F.4th at 1153-54 (same); *Smith*, 37 F.4th at 1165 (same); *Davis*, 960 F.3d at 485 (same).

And the remaining comparators each have different glide paths that render them unsuitable comparators. The FFFs' investment strategy is continually monitored and adjusted for "approximately 10 to 19 years after the target [retirement] year." DRJN, Ex. 12, FFF 2022 Summary Prospectus, p. CIRI_000693. Whereas the American and T. Rowe Price TDFs are managed for *30 years* after the target retirement year. DRJN, Ex. 27, American 2035 Fund 2022 Summary Prospectus, p. CIRI_000059; Ex. 28, TRP 2035 Fund 2022 Summary Prospectus, p. CIRI_000775. The Vanguard TDFs, on the other hand, are only managed for *7 years* after their target retirement year. DRJN, Ex. 29, Vanguard 2035 Fund 2022 Summary Prospectus, p. CIRI_000786. As a practical matter this means that between 2015 to 2022 (Plaintiff's selected timeframe) each of these TDFs had different timelines remaining to accumulate and retain retirement assets. These different time horizons have a direct impact on the amount of risk each of the investment managers are

willing to take, which in turn impacts performance. Plaintiff does not address these unique investment strategies or explain how managers with different stated goals are appropriate comparators. *Anderson*, 579 F. Supp. 3d at 1149, *aff'd* 137 F.4th 1015 (9th Cir. 2025); *Meiners*, 898 F.3d at 823 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged] TDFs were an imprudent choice at the outset."); *Phillips*, 2025 U.S. Dist. LEXIS 184960, at *20-22. The simple fact that each of these target date suites included a large number of total assets (¶ 77) is not enough to satisfy the meaningful benchmark standard.[15]

Finally, the Ninth Circuit's recent decision in *Anderson* also confirmed underperformance allegations that disregard composite benchmarks in favor of comparators with different "risk-mitigation strategies and objectives" fail the meaningful benchmark standard. 137 F.4th at 1023. Here, like *Anderson*, the FFFs had a customized benchmark which Plaintiff ignored in favor of inappropriate comparators. *See* DRJN, Ex. 6, 2020 404(a) Disclosure, p. CIRI_000536-37; Ex. 7, 2021 404(a) Disclosure, p. CIRI_000557-58; Ex. 8, 2022 404(a) Disclosure, p. CIRI_000578-79; Ex. 30, 2020 FFF Summary Prospectus, p. CIRI_000662; Ex. 31, 2021 FFF Summary Prospectus, p. CIRI_000683; Ex. 12, FFF 2022 Summary Prospectus, p. CIRI_000702-03. Thus, the Complaint's FFF underperformance allegations also do not satisfy the meaningful benchmark standard.

---

[15] To the extent Plaintiff tries to argue around the meaningful benchmark standard for these comparators by pointing to the fact that the Complaint uses "risk-adjusted returns" that argument is also foreclosed by *Anderson*. 137 F.4th at 1025 (rejecting a risk-adjusted analysis and holding "an ERISA plaintiff cannot make incomparable funds comparable simply by using a ratio.").

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)* Page **19**

In short, none of Plaintiff's underperformance comparisons satisfy the meaningful benchmark standard. The Court has multiple grounds to find Plaintiff's comparisons are legally flawed under this standard, each warranting dismissal of Plaintiff's imprudence claim.

### 2. Hindsight Performance Discrepancies Do Not Plausibly Infer Imprudence.

Even if the Court accepts Plaintiff's flawed comparators, the underperformance allegations still fail to state a claim because they improperly rely on hindsight. *Anderson*, 137 F.4th at 1021 (quoting *PBGC ex re. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2023)) (underperformance allegations must focus on "'information available to the fiduciary at the time of each investment decision'"); *see also Young Cho v. Prudential Ins. Co. of Am.*, No. 19-19886 (JMV) (SCM), 2021 U.S. Dist. LEXIS 185397, at *27-28 (D.N.J. Sept. 27, 2021) (dismissing an imprudence claim because "Plaintiff fails to make plausible allegations as to the information available to Defendants at a particular point in time when retention decisions were made.").

For example, Plaintiff alleges the FFFs were imprudent based on their "risk adjusted return" versus four (inapt) comparators for the rear-looking period between 2015 and 2022. ¶ 92. Certainly, the Plan's fiduciaries did not have access to this data point when analyzing the FFFs in real-time. And Plaintiff's suspiciously arbitrary seven-year timeframe further supports that this data point was cherry-picked with hindsight to state a claim. *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 341 (S.D.N.Y. 2024) ("Virtually any

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*
Page **20**

investment vehicle can be said to underperform its benchmark depending on the time frame that is chosen.").  In fact, the Plan's disclosures reveal that as of the end of 2021, *every vintage* of the FFFs *outperformed* their custom benchmark[16] over the five-year trailing period.  DRJN, Ex. 8, 2022 404(a) Disclosure, p. CIRI_000578-79.  Thus, the information available to fiduciaries at the time does not infer imprudence and Plaintiff's improper use of selective timeframes, against inapt comparators, with the benefit of hindsight, is insufficient to sustain the imprudence claim.

Relatedly, Plaintiff's underperformance allegations for the other Challenged Investments selectively switch between different cherry-picked time periods to allegedly show underperformance at one point in time.  ¶ 93 (using 5-year period from 2020-2025 to compare the Contrafund), ¶ 96-97 (using 10-year period from 2010-2019 for Hartford Fund), ¶ 99 (using 10-year period from 2010-2019 for Wasatch Fund), ¶ 102 (using 5-year period from 2020-2025 for MFS Fund).  But this data does not provide "factual allegations from which the Court may reasonably infer that the choice of the [challenged investment] was imprudent from the moment the administrator selected it, that the [challenged investment] became imprudent over time, or that the [challenged investment was] otherwise clearly unsuitable for the goals of the fund based on the ongoing performance." *Hall v. Capital One Fin. Corp.*, No. 1:22-cv-857, 2023 U.S. Dist. LEXIS 35391, at *18 (E.D. Va. Mar. 1, 2023); *see also Bloom*, 725 F. Supp. 3d at 341.

---

[16] *See also Anderson*, 137 F.4th at 1021, 1023 (dismissing a similar TDF challenge in part because plaintiffs failed to address their performance versus the custom benchmark).

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)* Page **21**

As discussed above, all investments underperform at some point. *White v. Chevron Corp.*, No. 16-cv-793-PJH, 2016 U.S. Dist. LEXIS 115875, at \*55 (N.D. Cal. Aug. 29, 2016) ("Indeed, a fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy."); *Bloom*, 725 F. Supp. 3d at 341.  Which is why the Complaint's identification of underperformance as of a single point in time, for cherry-picked timeframes, does not provide the Court with sufficient context to infer imprudence.  Contrary to the Plaintiff's manipulated narrative, the Plan's disclosures show strong long-term performance for the Challenged Investments over standardized timeframes during the Class Period.[17]  The Complaint is a textbook example of the improper use of hindsight which is insufficient to state a plausible imprudence claim under ERISA.

### 3. The Complaint's Alleged Underperformance Does Not Infer Imprudence.

Finally, even if the Court accepts Plaintiff's inapt comparators, and credits the cherry-picked timeframes which improperly rely on hindsight, the underperformance identified in the Complaint is still insufficient to infer Defendants imprudently administered the Plan.  *Anderson*, 137 F.4th at 1021 ("it is not enough for a plaintiff simply

---

[17] For example, the Contrafund consistently showed strong long-term performance throughout the Class Period. DRJN, Ex. 6, 2020 404(a) Disclosure, p. CIRI_000534 (outperforming benchmark over 5- and 10-year periods); Ex. 7, 2021 404(a) Disclosure, p. CIRI_000555 (outperformed benchmarks over 1-, 5-, and 10-year periods); Ex. 8, 2022 404(a) Disclosure, p. CIRI_000576 (outperformed benchmark over 5- and 10-year periods); Ex. 10, 2024 404(a) Disclosure, p. CIRI_000617 (outperformed benchmark over 1-, 5-, and 10-year periods); Ex. 11, 2025 404(a) Disclosure, p. CIRI_000637 (outperformed benchmark over 1-, 5-, and 10-year periods).  The same is true of the MFS Fund. DRJN, Ex. 6, 2020 404(a) Disclosure, p. CIRI_000535 (outperformed benchmark over 1-, 5-, and 10-year periods); Ex. 7, 2021 404(a) Disclosure, p. CIRI_000556 (outperformed benchmark over 1-, 5-, and 10-year periods); Ex. 8, 2022 404(a) Disclosure, p. CIRI_000577 (outperformed benchmark over 1-, 5-, and 10-year periods); Ex. 9, 2023 404(a) Disclosure, p. CIRI_000598 (outperformed benchmark over 5- and 10-year periods); Ex. 10, 2024 404(a) Disclosure, p. CIRI_000618 (outperformed benchmark over 10-year period).

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*

Page **22**

to allege that the fiduciaries could have obtained better results—whether higher returns, lower risks, or reduced costs—by choosing different investments."); *Smith*, 37 F.4th at 1166 ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision…"). Courts considering similar claims have repeatedly affirmed that investment imprudence cannot be inferred without substantial, long-term underperformance. *Dorman v. Charles Schwab Corp.*, No. 17-cv-285-CW, 2018 U.S. Dist. LEXIS 218049, at *8 (N.D. Cal. Sept. 20, 2018) ("offering and retaining funds that have underperformed modestly…is not enough to show malfeasance."); *Collins v. Northeast Grocery, Inc.*, No. 24-2339-cv, 2025 U.S. App. LEXIS 20979, at *6 (2d Cir. Aug. 18, 2025) (4% underperformance over six-year timeframe does not infer imprudence); *Gonzales v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 164 (E.D.N.Y. 2022) (holding underperformance of 2.33% over 3-year and 2.57% over five-year did not infer imprudence and gathering cases holding up to 4.48% underperformance did not suffice); *Patterson*, 2019 U.S. Dist. LEXIS 174832, at *32-34; *Bloom*, 725 F. Supp. 3d at 341; *Nolan*, 2026 U.S. Dist. LEXIS 96855, at *18 ("minimal underperformance of one to four percent, without more, does not plausibly allege imprudence.").

The slight performance discrepancies identified in the Complaint cannot sustain an imprudence claim. Plaintiff only alleges that the FFFs underperformed the S&P Target Allocation Series by 0.39% between 2010 and 2019 (¶ 68-69) and comparators by between 0.75% and 2.35% from 2015 to 2022 (¶ 92); the Contrafund underperformed by 0.69%

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*        Page **23**
Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 29 of 40

from 2020 to 2025 (¶ 93); the Hartford Fund underperformed by 1.63% from 2010 to 2019 (¶ 96); the Wasatch Fund *outperformed* its benchmark from 2010 to 2019 (¶ 99); and the MFS Fund underperformed by 2.87% from 2020 to 2025 (¶ 102). This does not plausibly suggest imprudence and confirms that Plaintiff's imprudence claim fails under ERISA's pleading standards.

### 4. Plaintiff's Remaining Conclusory and Speculative Allegations Fail to State a Claim.

After disposing of Plaintiff's inappropriate comparisons, all that remains are speculative and conclusory allegations that fail to state a claim under ERISA's context specific pleading standards.

First, the Complaint argues Defendants should have removed the Hartford Fund in favor of "one of the dozens of S&P index mutual funds that cost nothing or only 4 basis points per year." ¶ 97. But this is as wrong as it sounds. The Hartford Fund's objective is to grow assets by investing in companies with high dividend payments, not track the S&P 500's returns, thus comparing it to unnamed, dissimilar index funds is useless. *See* DRJN, Ex. 20, Hartford 2026 Summary Prospectus, p. CIRI_000736-37. Moreover, Plaintiff overlooks that the Plan *did* offer the passively managed Fidelity Total Market Index Fund throughout the Class Period for participants that desired a low-cost investment designed to track the total return of the United States stock market. *See* DRJN, Ex. 6, 2020 404(a) Disclosure, p. CIRI_000535 (showing the Fidelity Total Market Index Fund offered for 1.5 basis points); Ex. 11, 2025 404(a) Disclosure, p. CIRI_000638 (same); Ex. 32, Fidelity Total Market Index Fund 2025 Summary Prospectus, p. CIRI_00729. Even still, arguing

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*         Page **24**
Case 3:26-cv-00084-ACP     Document 16     Filed 05/14/26     Page 30 of 40

for removal of an actively managed fund for a passively managed alternative fails to state a claim under ERISA. *Supra* p. 18. As a result, Plaintiff's conclusory challenges to the Hartford Fund fail to state a claim.

Second, Plaintiff's implication that Defendants improperly used the Russell 3000 index as a benchmark for the MFS Fund (rather than the Russell Mid Cap Growth Index) also fails support a plausible claim. ¶ 105. As an initial matter, the MFS Fund was benchmarked against the Russell Mid Cap Growth from 2020 to 2024. DRJN, Ex. 6, 2020 404(a) Disclosure, p. CIRI_00535; Ex. 7, 2021 404(a) Disclosure, p. CIRI_000556; Ex. 8, 2022 404(a) Disclosure, p. CIRI_000577; Ex. 9, 2023 404(a) Disclosure, p. CIRI_000598; Ex. 10, 2024 404(a) Disclosure, p. CIRI_000618. Moreover, the MFS Fund's summary prospectus reveals that the managers benchmark the fund against both the Russell 3000 Index *and* the Russell Mid Cap Growth Index. DRJN, Ex. 22, MFS 2025 Summary Prospectus, p. CIRI_000746. Thus, there is nothing inherently unreasonable about the Plan switching a Plan disclosure's benchmark from one of the MFS's benchmarks to the other. *Id.*

Third, the Complaint includes a smattering of other criticism, including that the FFFs included junk bonds (¶ 89), the Contrafund had a poor geometric mean and elevated volatility (¶ 93), the Hartford and Wasatch Funds had poor standard deviation (¶¶ 97, 99), and the MFS Fund included excess risk (¶ 101). But because Plaintiff has not plausibly alleged significant, sustained underperformance to a meaningful comparator, Plaintiff cannot tie those critiques to negative outcomes sufficient to infer imprudence. *See Supra*

p. 14-24; *Anderson*, 137 F.4th at 1026 (holding general arguments concerning an investment's risk was insufficient to state an imprudence claim); *Nolan*, 2026 U.S. Dist. LEXIS 96855, at \*17.

Finally, the Complaint contains one stray reference that Plaintiff's underperformance allegations demonstrate Defendants did not follow the Plan's IPS and therefore violated the duty of follow plan documents under 29 U.S.C. § 1104(a)(1)(D). *See* ¶ 63. Because Plaintiff's underperformance allegations are meritless this claim also fails. *See Nolan*, 2026 U.S. Dist. LEXIS 96855, at \*36-39 (dismissing an identical claim because an IPS is not a plan document and the investment challenges were meritless); *Enstrom v. SAS Inst. Inc.*, No. 5:24-CV-105-D, 2026 U.S. Dist. LEXIS 35036, at \*17-18 (E.D.N.C. Feb. 12, 2026).

Simply put, Plaintiff's abundance of misguided allegations are insufficient to state an imprudence claim.

### C. Plaintiff's Share Class Allegations Fail to State an Imprudence Claim.

Plaintiff also alleges that Defendants' retention of the K Share class of the FFFs from the beginning of the Class Period until November 2022 (when the Plan switched to the FFF CITs) was imprudent because the K6 share class was available for 20 basis points less. *See* ¶ 46-47.[18] However, Plaintiff's claim ignores the concept of revenue sharing – a

---

[18] Plaintiff tries to support this claim by quoting the out-of-circuit decision in *In re Omnicom ERISA Litig.*, No. 20-cv-4141 (CM), 2022 U.S. Dist. LEXIS 239690 (S.D.N.Y. Aug. 11, 2022). *See* ¶ 49-50. But this selective quotation is misplaced. First, the quote in paragraph 49 is a section of the opinion where the court quoted plaintiff's complaint—the court is not crediting that allegation as Plaintiff suggests. Second, Plaintiff ignores the holding from the *Omnicom* decision—the court granted summary judgment and found revenue sharing allegations were not included in plaintiff's

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
Case No. 3:26-cv-00084 (ACP) <span style="float:right">Page **26**</span>

common practice of bundling recordkeeping and administrative fees with investment fees. *Matney*, 80 F.4th at 1151 n.12; *White*, 2016 U.S. Dist. LEXIS 115875, at *44; *Boyette v. Montefiore Med. Ctr.*, No. 22-cv-5280 (JGK), 2023 U.S. Dist. LEXIS 203442, at *7-8 (S.D.N.Y. Nov. 13, 2023); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-cv-1839 (VAB), 2016 U.S. Dist. LEXIS 180567, at *32 (D. Conn. Dec. 30, 2016) ("Plaintiffs' allegations that [defendant] engaged in revenue sharing, without more, do not state a claim for a violation of ERISA.").

Here, the K share class of the FFFs offered revenue sharing, whereas Plaintiff's preferred K6 share class did not. The rationale of bunding participants fees into the K share class was disclosed and repeatedly explained to participants. In October 2020, Defendants disseminated a notice to Plan participants that detailed their yearly fees for recordkeeping ($58 per year or $14.50 per quarter) and administrative services ($24 per year or $ 6 per quarter). DRJN, Ex. 33, Oct. 2020 Participant Notice, p. CIRI_000752. This notice explained that the FFFs included 20 basis points of revenue credits that would be used to *reduce* participant's recordkeeping and administrative expenses. *Id.* at CIRI_000753. In other words, the 20-basis point difference between the K and K6 share classes (*see* ¶ 46) was simply another means of paying participant's recordkeeping and administrative fees. *See, e.g., Smith v. Rec. Equip. Inc.*, No. 3:24-cv-6032-TMC, 2025 U.S. Dist. LEXIS 135847, at *20-25 (W.D. Wash. July 16, 2025) (holding challenges to how defendants

---

second amended complaint and therefore not at issue in that case. *Omnicom*, 2022 U.S. Dist. LEXIS 239690, at *40-41. That holding does not support Plaintiff's share class allegations and should be disregarded as irrelevant.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*

allocate administrative fees did not plausibly state an imprudence claim).  This was not an "extra" fee as Plaintiff alleges.

The application of the FFFs' revenue sharing is also detailed in Plaintiff's quarterly account statements.  For example, in the second quarter of 2021 Plaintiff held $59.09 in the FFF 2055.  DRJN, Ex. 34, Plaintiff Q2 2021 Statement, p. CIRI_000031.  His quarterly statement shows 20 basis points of Plaintiff's investments in the FFF (20 basis points of $59.09 is $0.01) were added to his account as a revenue credit (reducing his administrative fees). *Id.* at CIRI_000033.  This straightforward application of the FFFs' revenue credit was disclosed on each of Plaintiff's quarterly statements.  DRJN, Ex. 35, Plaintiff Q3 2021 Statement, p. CIRI_000037 ($0.03 revenue credit); Ex. 36, Plaintiff Q4 2021 Statement, p. CIRI_000041 ($0.02 revenue credit).[19]

After accounting for the K share class's revenue sharing credit, Plaintiff was not worse off in the K share class, thus his share class allegations are meritless.  *See Matney*, 80 F.4th at 1151-52 (affirming dismissal of a similar share class claim where judicially noticeable documents revealed the straightforward application of revenue sharing for an allegedly costly share class); *Boyette*, 2023 U.S. Dist. LEXIS 203442, at *7-8 (same); *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011); *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009).[20]

---

[19] Plaintiff started Q1 2022 with a balance of $2.11 which was reduced to $0 due to administrative fees. DRJN, Ex. 38, Plaintiff Q1 2022 Statement.  Plaintiff's account remained at $0 for Q2 and Q3 of the 2022 Plan year.  DRJN, Ex. 39, Plaintiff Q2 2022 Statement; Ex. 40, Plaintiff Q3 2022 Statement.

[20] Plaintiff also makes a stray reference that the D Class of the FFF CITs were "more expensive" but does not identify a less expensive, available share class of the FFF CITs.  *See* ¶ 51.  Thus, to the extent Plaintiff attempts to assert a challenge the FFF CITs' share class that claim fails as there is not a plausibly alleged alternative.

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*                                                            Page **28**
Case 3:26-cv-00084-ACP     Document 16     Filed 05/14/26     Page 34 of 40

Plaintiff's imprudence claim in Count I fails under ERISA's context specific pleading standards. Plaintiff's underperformance allegations fail to identify a meaningful benchmark for any of the Challenged Investments and the slight discrepancies identified improperly rely on hindsight. Likewise, Plaintiff's share class allegations omit crucial details about the FFF K share class revenue credits, which reveal that claim is meritless. The Court should dismiss Count I for failure to state a claim.

## II.  Plaintiff's Prohibited Transaction Allegations Fail to State a Claim.

The Complaint concludes with two thinly-pled prohibited transaction claims that also fail to plausibly state a claim.

### A. Plaintiff Fails to State a Prohibited Transaction Claim under Section 406(b).

Plaintiff claims Defendants violated ERISA § 406(b), 29 U.S.C. § 1106(b), which prohibits transactions between ERISA plans and fiduciaries. Specifically, Plaintiff alleges Defendants managed funds, furnished services to the Plan, and received compensation. ¶¶ 163-64. But Plaintiff does not allege any facts supporting this conclusory allegation. Indeed, the documents relied on in the Complaint do not support any credible allegation that Defendants managed Plan investments, furnished services to the Plan, or received compensation from the Plan. *See, e.g.*, DRJN, Ex. 11, 2025 404(a) Disclosure (revealing all Plan investments are managed by third-party investment managers); Ex. 3, 2024 Form 5500, Schedule C (revealing no Defendants received compensation from the Plan). Because Plaintiff has not plausibly pled a "transaction," this claim must be dismissed. *Peeler*, 2026 U.S. Dist. LEXIS 14223, at *40-41; *see also Hutchins v. HP Inc.*, 767 F.

Supp. 3d 912, 928-29 (N.D. Cal. 2025); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 880 (D. Ariz. 2025).[21]

### B. Plaintiff Fails to State a Prohibited Transaction Claim under Section 406(a).

Plaintiff also argues that UBS's compensation for Plan investment consulting services constitutes a prohibited transaction with a party in interest under ERISA § 406(a), 29 U.S.C. § 1106(a). ¶¶ 115, 121, 165(a). But this claim is untimely and should be dismissed for lack of standing for failure to plausibly allege an injury-in-fact.

First, Plaintiff's allegations plainly demonstrate that Defendants engaged UBS to provide investment advisory services before the Class Period. ¶ 120 (alleging the Plan engaged UBS since at least 2016). This means the challenged transaction (engaging UBS) is barred by ERISA's six-year statute of repose. 29 U.S.C. § 1113; *see White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) (affirming dismissal of a prohibited transaction claim challenging a service provider engaged before the statute of limitations period).

Further, ERISA 406(b)'s presumptive unlawfulness of permitting a plan to transact with a party in interest does not extinguish the legal requirement to establish standing at the inception of a lawsuit. *Peeler*, 2026 U.S. Dist. LEXIS 14223, *37; *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708-09 (2025). In *Peeler*, the court analyzed a similar, thinly pled challenge to an investment advisor's fees and found the absence of a meaningful

---

[21] Plaintiff's monitoring claim in Count II rises and falls on the imprudence allegations which, as explained herein fail to state a claim. *Supra* p. 12-29. As a result, this claim also fails to state a claim and should be dismissed. *Wilson v. Craver*, 994 F.3d 1085, 1096 (9th Cir. 2021).

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*

benchmark supporting their claims meant plaintiff failed to establish "a constitutionally cognizable injury" and dismissed for lack of standing. *Id.* at *37-39. Plaintiff's challenges to UBS's fees should be dismissed on the same grounds.

Like investment claims, challenges to service providers' fees must also be supported by meaningful benchmarks which, in the context of service provider fees, would be the fees of other service providers that provided the same type and quality of services for less. *Albert*, 47 F.4th at 582; *Collins*, 2025 U.S. App. LEXIS 20979, at *8; *See also Matney*, 80 F.4th at 1157-58; *Barrett*, 112 F.4th at 1139; *Singh*, 123 F.4th at 94; *England*, 136 F.4th at 637; *Matousek*, 51 F.4th at 279-280.

The Compliant does not identify any investment advisors that provide the same type or quality of investment advisory services as UBS for less money. Instead, Plaintiff references a 2017 Fee Benchmarker publication which alleged states $300 is the average hourly rate for investment advisory services, and then multiplies that rate by data from a different market survey claiming that the average consultant spends 53 hours per year. ¶ 116-117. From there, Plaintiff asserts that any compensation to UBS over $15,000 is unreasonable. ¶ 119.

These exact metrics have been rejected elsewhere. *Nolan*, 2026 U.S. Dist. LEXIS 96855, *26-27 (rejecting this metric as an appropriate comparator to challenge an investment advisor's fees). And for good reason. The 2017 Fee Benchmarker report is irrelevant to UBS's fees during a Class Period that starts in 2020. *Singh*, 123 F.4th at 95-96 (rejecting plaintiffs' attempt to compare a service provider's fees over the entire class

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*
Page **31**
Case 3:26-cv-00084-ACP     Document 16     Filed 05/14/26     Page 37 of 40

period to an outdated comparator); *Mateya v. Cook Grp., Inc.*, No. 1:22-cv-1271-RLY-TAB, 2023 U.S. Dist. LEXIS 124838, at *9 (S.D. Ind. June 16, 2023) ("costs in one year are not necessarily comparable to costs in another."); *Miller v. Pfizer, Inc.*, No. 1:23-cv-594, 2024 U.S. Dist. LEXIS 252014, at *8-9 (W.D. Mich. Oct. 17, 2024). Also, courts around the country recognize that industry averages are insufficient to plausibly allege a challenge to a service provider's fees under ERISA. *Smith*, 37 F.4th at 1169; *Matousek*, 51 F.4th at 279-80; *Matney*, 80 F.4th at 1157-58. Such averages do not provide the Court sufficient context to credit this allegation. *Nolan*, 2026 U.S. Dist. LEXIS 96855, *26-27. For example, what size plans do these advisory firms advise, what types of services do they offer for this fee, and what is the sample size? *See Anderson*, 579 F. Supp. 3d at 1150-51, *aff'd* 137 F.4th 1015 (refusing to credit allegations premised on a broad metric where plaintiffs did not explain the underlying data); *Matney*, 80 F.4th at 1155; *Matousek*, 51 F.4th at 282; *Phillips*, 2025 U.S. Dist. LEXIS 184960, at *15-16.

The frailty of Plaintiff's allegations are fatal to his standing to assert a prohibited transaction claim. The lynchpin of Plaintiff's claim is that Defendants caused him to pay excessive fees to UBS, thus he suffered a loss to his Plan account. But, because the Complaint does no more than speculate that an excessive fee was deducted from Plaintiff's Plan account, he has not adequately alleged a loss and lacks standing to pursue his claim. *Peeler*, 2026 U.S. Dist. LEXIS 14223, at *39 (holding similar speculative allegations of excessive investment manager fees "fail[ed] to establish a constitutionally cognizable injury" and therefore plaintiff lacked standing).

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)* Page **32**
Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 38 of 40

## CONCLUSION

Plaintiff's Complaint lacks the context required to state a claim under ERISA. The imprudence claim hinges on underperformance allegations which rely exclusively on inappropriate comparisons that fail the meaningful benchmark standard. Plaintiff's share class allegations ignore the Plan's revenue sharing credits, and the prohibited transaction claim is untimely and fails to identify a legally cognizable injury. The Court should dismiss Plaintiff's Complaint for lack of standing and failure to state a claim.

Respectfully submitted,

*/s/ Lindsey H. Chopin*
Lindsey H. Chopin *
Stacey C.S. Cerrone *
Adam R. Carlisle *
**JACKSON LEWIS P.C.**
601 Poydras Street, Suite 1400
New Orleans, LA 70130
Telephone: 504-208-1755
Facsimile: 504-208-1759
stacey.cerrone@jacksonlewis.com
lindsey.chopin@jacksonlewis.com
adam.carlisle@jacksonlewis.com

*Admitted Pro hac vice
David A. Nenni (AK Bar No. 1607063)
**JACKSON LEWIS P.C.**
PNC Center, 26th Floor
201 E. Fifth Street
Cincinnati, OH 45202
Telephone: 513-898-0050
Facsimile: 513-898-0051
david.nenni@jacksonlewis.com

*Counsel for Defendants*

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*
Page **33**
Case 3:26-cv-00084-ACP    Document 16    Filed 05/14/26    Page 39 of 40

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2026, a true and accurate copy of the foregoing

*Defendants' Motion to Dismiss* was filed with the Court's CM/ECF system which will

electronically send notice to the following counsel included on the CM/ECF system's

electronic service list:

Joshua B. Cooley
Katherine Elsner
**EHRHARDT, ELSNER & COOLEY**
215 Fidalgo Ave., Ste. 201
Kenai, AK 99611
josh@907legal.com
katie@907legal.com

Gary M. Klinger
**MILBERG, PLLC**
227 W. Monroe St., Ste. 2100
Chicago, IL 60606
gklinger@milberg.com

*/s/ Lindsey H. Chopin*
Lindsey H. Chopin

Defendants' Motion to Dismiss
*Layman v. Cook Inlet Region, Inc., et al.*
*Case No. 3:26-cv-00084 (ACP)*